**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Kurt Haberle, derivatively on behalf of Gander Mountain Company, | Civil No. 05-315 (DWF/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Mark R. Baker; Dennis M. Lindahl; Ronald A. Erickson; Marshall L. Day; Gerald A. Erickson; Karen M. Bohn; Richard C. Dell; Dale D. Nitschke; Donovan A. Erickson; Neal D. Erickson; Richard A. Erickson; Marjorie J. Pihl; and Gander Mountain Company, a Minnesota corporation, | |
| Defendants. | |

Brian J. Robbins, Esq., and Jeffrey P. Fink, Esq., Robbins Umeda & Fink, LLP; Russell M. Spence, Jr, Esq., Spence Law Firm; and Timothy L. Miles, Esq., Barrett Johnston & Parsley, counsel for Plaintiff.

Ahna M. Thoresen Severts, Esq., and Wendy J. Wildung, Esq., Faegre & Benson - Minneapolis, counsel for Defendants.

**Introduction**

The above-entitled matter came before the undersigned United States District Judge on July 8, 2005, pursuant to Defendants' Motion to Dismiss. Specifically, Defendants contend that: (1) Plaintiff Kurt Haberle has not pleaded sufficient facts to excuse his failure to make a pre-suit demand upon Gander Mountain's Board of Directors; (2) the Complaint does not plead fraud with particularity as required by Fed. R. Civ. P. 9(b); (3) the claims are not ripe for adjudication; and (4) the Complaint fails to state claims upon which relief may be granted. Plaintiff opposes Defendants' motion in all

respects. For the reasons outlined below, Defendants' Motion to Dismiss is granted.

**Background**

Gander Mountain is a Minnesota corporation with its headquarters in Minneapolis, Minnesota. Gander Mountain is a retailer offering merchandise that caters to outdoor lifestyle enthusiasts, with a particular focus on hunting, fishing, and camping. Holiday Stationstores, Inc. ("Holiday"), acquired the existing Gander Mountain operations in 1996 and 1997. Over time, Gander Mountain dramatically expanded the number of stores it operated. In April 2004, Gander Mountain had sixty-six stores in nine states.

Prior to Gander Mountain's initial public offering ("IPO"), Holiday, Lyndale Terminal Co. ("Lyndale"), and members of the Erickson Family owned all of Gander Mountain's voting stock.[1] Holiday and Lyndale are wholly owned by members of the Erickson Family.

On February 5, 2004, Gander Mountain filed a Form S-1 registration statement ("the Registration Statement") for its IPO. The IPO resulted in net proceeds to Gander Mountain of $96.2 million. Gander Mountain used a portion of its IPO proceeds to reduce outstanding indebtedness with Fleet Retail Finance and to repay a $9.8 million debt to Holiday. Holiday, Lyndale, and the Erickson Family agreed not to sell any Gander Mountain stock for 180 days after the offering.

Prior to the IPO, the Gander Mountain Board of Directors consisted of six members of the Erickson Family. After Gander Mountain's IPO, four members of the Erickson Family resigned from the Board of Directors. The resigning board members were replaced by Mark Baker, Marshall Day,

---

[1] The Erickson Family includes Gerald Erickson, Ronald Erickson, Donovan Erickson, Neal Erickson, Richard Erickson, and Marjorie J. Pihl.

Karen Bohn, Richard Dell, and Dale Nitschke.

On May 19, 2004, Gander Mountain released its first quarter results for 2004. A May 19, 2004, press release (the "May Press Release") showed a 42% increase in sales over the prior year. The May Press Release estimated that sales would continue to grow by approximately 3% to 5% in 2004. The May Press Release also estimated Gander Mountain's pre-tax income to be $16 to $21 million.

On January 14, 2005, Gander Mountain issued a press release (the "January Press Release") that revised its pretax earnings for fiscal 2004 to a range of $2 to $4 million. In the January Press Release, Gander Mountain stated that it expected its sales growth to drop to a negative 2% to 3%. After Gander Mountain released this information, Gander Mountain shares plummeted to $9.30, or 60% less than what the shares traded for at their all-time high. By February 1, 2004, Gander Mountain stock had dropped even further to $8.44 per share.

Shortly after Gander Mountain issued the January Press Release, Gander Mountain and eight of its officers and directors were sued in this court in six federal securities class actions. The plaintiffs in the securities actions allege that Gander Mountain's officers and directors violated Section 11 of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act during the time period between April 20, 2004, and January 13, 2005, by filing a misleading Registration Statement and issuing misleading projections about Gander Mountain's anticipated sales growth and income for 2004.

After the securities actions were filed, Haberle filed this derivative complaint. Haberle did not make any pre-suit demand of the Gander Mountain Board of Directors. In his complaint, Haberle asserts that the Erickson Family conspired with certain individuals to take Gander Mountain public via a

misleading registration statement. Haberle contends that Defendants did so in order to obtain a return on an otherwise illiquid investment in Gander Mountain. Haberle also alleges that Gander Mountain's sales growth and pretax income projections were false and misleading.

**Discussion**

**I.      Standard of Review**

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *See id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

**II.     Failure to Make a Pre-Suit Demand on the Board of Directors**

The parties agree that the substantive law of Minnesota governs this action. Generally, a shareholder must make a demand for relief to the board of directors before bringing a derivative action on behalf of a corporation. *Winter v. Farmers Educ. & Coop. Union of America,* 107 N.W.2d 226, 233 (Minn. 1961). However, the demand requirement is excused if demand on the board would be "futile." *Id.* at 234; *Reimel v. MacFarlane,* 9 F. Supp. 2d 1062, 1065 (D. Minn. 1998). Pursuant to Federal Rule of Civil Procedure 23.1, a plaintiff must allege with particularity "the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority

and . . . the reasons for plaintiff's failure to obtain the action or for not making the effort." Although the pleading requirement is a matter of federal procedure, the determination of whether demand would have been futile is a matter of Minnesota substantive law. *Reimel,* 9 F. Supp. 2d at 1065.

In Minnesota, the determination of demand futility is a mixed question of law and fact left to the discretion of the court. *In re Xcel Energy, Inc.,* 222 F.R.D. 603, 606 (D. Minn. 2004) (citing *Prof'l Mgmt. Assocs., Inc. v. Coss,* 598 N.W.2d 406, 410 (Minn. Ct. App. 1999)). Shareholder derivative actions are still somewhat rare in Minnesota. *Id.* Thus, Minnesota courts often look to the decisions of Delaware courts for guidance in this area of the law. *Id.* However, Minnesota courts have specifically refused to "adopt blindly" the Delaware approach as doing so in certain situations would be "at odds with general principles of Minnesota law." *Reimel,* 9 F. Supp. 2d at 1067.

Plaintiff asserts demand is futile in this case based on a number of circumstances, including that: (1) the majority of the board of directors are accused of wrongdoing; (2) the majority of the board of directors are dominated by a person, persons, or an entity; (3) certain board members are dependent on the company for their livelihood; (4) the majority of the board members have current or past business, personal, and employment relationships; and (5) the audit committee participated in the wrongdoing. Plaintiff contends that the Court will find that a demand of the board of directors would have been futile when the Court considers the totality of the allegations pleaded.

In contrast, Defendants assert that Plaintiff's allegations are conclusory, generic, and legally insufficient. Defendants claim that Plaintiff has not provided any particularized facts to support his allegations. Defendants also contend that the allegations are very similar to those made by Plaintiff's

counsel in three other cases filed in Minnesota courts in recent years. Defendants point out that each of these cases was dismissed.

After reviewing Plaintiff's Complaint, the Court finds that Plaintiff's allegations are insufficient to convince the Court that demand would be futile because most of the allegations pleaded by Plaintiff are generic and could be alleged against almost any board of directors in a derivative suit. For instance, allegations that the entire board, including the audit committee, was involved in the wrongdoing, or that certain directors are dependent on the company for their livelihood are generic and likely found in the vast majority of derivative suits.

In addition, those allegations that appear specifically tailored to this suit also prove to be insufficient. Plaintiff makes much of the fact that the Erickson family has a significant ownership interest in Gander Mountain and can control the election of board members. Thus, Plaintiff asserts that demand is futile insofar as it would harm the very individuals to whom the directors are allegedly beholden. In contrast, Defendants attempt to downplay the Erickson Family's interest and control over the company.

The Court finds Defendants' attempt to minimize the control that the Erickson Family has over the company to be somewhat disingenuous. Clearly, the Erickson Family, both via its personal shares and those held by Holiday and Lyndale, wields considerable control over Gander Mountain. Nonetheless, the Court does not find this allegation to be compelling. The mere existence of a single family holding a significant number of shares in a company is insufficient, in and of itself, to make demand futile; otherwise, the demand requirement would be negated in derivative suits brought against nearly every family-owned business.

Plaintiffs have merely alleged, without providing factual support, that the Erickson Family members act as a single entity in exercising their control over the company.  The Court also finds that the independent directors on the board are situated such that the Erickson Family would have considerable difficulty in influencing these directors' opinions in the event the family members did decide to act together.

Based on a review of the Complaint in its entirety, the Court finds that Plaintiff has not demonstrated that demand on the board would be futile.  Thus, Plaintiff must make a demand on the board before bringing a derivative action against Defendants.  Because the Court has disposed of this case on the demand issue, the Court need not consider the other grounds for dismissal raised by Defendants.

## Conclusion

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (Doc. No. 8) is **GRANTED**.

2. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.


Dated:  August 30, 2005         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court